Irving **GILINSKY**, also known as Samuel Benjamin Feldman, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 20084.

United States Court of Appeals Ninth Circuit.

Nov. 8, 1966.

Raymond E. Sutton, Las Vegas, Nev., for appellants.

John W. Bonner, U. S. Atty., Robert S. Linnell, Asst. U. S. Atty., Las Vegas, Nev., for appellee.

Before POPE, HAMLEY and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

This matter is here for the second time. As appears from our former opinion [Gilinsky v. United States, 335 F.2d 914 (9th Cir. 1964)], the appellant, on pleas of guilty, was convicted of all four counts of an indictment charging him with causing falsely made securities to be transported in interstate commerce (18 U.S.C. §§ 2314, 2). The district court directed that the sentences on Counts I, II and III were to run consecutively and that the sentence on Count IV was to be concurrent with that on Count I. Thereafter appellant filed a petition under Rule 35 of the Federal Rules of Criminal Procedure to vacate the sentence on the ground that it was illegal. The substance of his allegations was that the several counts in fact embraced only one offense. His petition was summarily rejected and he then appealed.

Observing that it would be grossly unjust to allow multiple convictions to stand if these allegations were true, we directed the district court to entertain Gilinsky's motion to set aside the judgment and withdraw his pleas and to take evidence on factual issues. This was done.[1]

No attention was devoted to Count IV, since the sentence on it was concurrent with that on Count I. United States v. Sheridan, 329 U.S. 379, 381, 67 S.Ct. 332, 91 L.Ed. 359 (1946).

The charge of transportation in each of the three counts under consideration was laid upon a single check that Gilinsky drew on the American National Bank, Newport, Kentucky, and passed in Seattle, Washington. These checks were not further identified except as to amount: $383.80 (Count I), $100.00 (Count II) and $150.00 (Count III).

---

1. We held Rule 35 inapplicable. However, we further decided that his petition could be treated as one under Rule 32(d) and the proceedings were conducted pursuant to that Rule.

At the hearing the government produced a check for $383.80 (hereinafter "Exhibit C"), another for $150.00 ("Exhibit E") and three checks for $100.00 ("Exhibits A, B and D"), any one of which could have supported Count II.

The evidence was in substance that Exhibits C and D were passed respectively to the Faye Wilson Travel Agency and the New Washington Hotel in Seattle on April 11; the following day (April 12) they were taken by the local depositories of the payees to the Federal Reserve Bank at Seattle and immediately forwarded to the Federal Reserve Bank at Cincinnati, where they both were cleared on April 15 and sent to their ultimate destination at Newport, Kentucky, arriving there on April 17 (a Monday).

Exhibits A, B and E were passed to the Olympia Hotel in Seattle on April 11; its local depository did not take them to the Federal Reserve Bank at Seattle but on April 13 sent them to the National City Bank of Cleveland; endorsements on them indicate they were next handled on April 17 by the Federal Reserve Bank at Cincinnati and were ultimately presented to the drawee bank on April 18.

The repeated coincidence of time and place at the inception, during the intermediate stages and at the conclusion of the transportation, make it clear that the checks comprised two distinct units and that each unit was transported in commerce at a different time than the other. Unlike Strickland v. United States, 325 F.2d 970 (8th Cir. 1964), no gap exists in the proof to render this conclusion a mere possibility and "at best speculative." [2]

The district court, however, found that none of the checks traveled together and that each was transported separately from the others. This finding was clearly erroneous for, as pointed out, the proof makes manifest the fact that Exhibits C and D traveled as one single unit and Exhibits A, B and E traveled as another but that neither unit traveled simultaneously with the other. Thus, it would appear that there were but two offenses rather than three for which Gilinsky could be sentenced.

Additionally, the district court appeared to rest decision upon an alternative ground that the transportation of each check would constitute a separate offense even if all the checks were shipped simultaneously in commerce. The statute itself does not nicely delineate the allowable unit of prosecution; it provides in loose terms that transportation of "any falsely made * * * securities" constitutes a punishable offense and nowhere makes clear whether Congress intended the word "any" to be broadly inclusive or narrowly restricted in meaning.

However, there can be no real doubt regarding the proper construction of this particular penalizing provision. In Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905 (1955) the Court had under consideration this same problem regarding the Mann Act. There the petitioner was convicted and sentenced to serve sentences on two counts, each relating to a different woman that he had transported on the same trip. The Court, finding uncertainty as to what Congress made the allowable unit of prosecution declared that:

> "[T]he ambiguity should be resolved in favor of lenity. And this is not out of any sentimental consideration, or for want of sympathy with the purpose of Congress in proscribing evil or anti-social conduct. It may fairly be said to be a presupposition of our law to resolve doubts in the enforcement of a penal code against the imposition of a harsher punishment. This in no wise implies that language used in criminal statutes should not be read with the saving grace of common sense with which other enactments, not cast in technical language, are to be read.

2. In *Strickland* there was a lack of substantial evidence to establish critical dates when the checks moved in commerce between the intermediate banks during the clearing process.

Nor does it assume that offenders against the law carefully read the penal code before they embark on crime. It merely means that if Congress does not fix the punishment for a federal offense clearly and without ambiguity, doubt will be resolved against turning a single transaction into multiple offenses, when we have no more to go on than the present case furnishes." (p. 83, 75 S.Ct. at p. 622)

And more recently in Castle v. United States, 368 U.S. 13, 82 S.Ct. 123, 7 L.Ed. 2d 75 (1961) the Court again applied this same principle. There, the petitioner had been found guilty and sentenced on all five counts of an indictment in each of which he was charged with transporting specified forged money orders from Indiana to Texas in violation of 18 U.S.C. § 2314—the very statute now under consideration. The Supreme Court, by a per curiam opinion, vacated the multiple judgment, saying that "under the principles announced in Bell v. United States, 349 U.S. 81, 75 S.Ct. 620, 99 L.Ed. 905, the petitioner was guilty of but a single offense * * *."

■ The government seeks to distinguish the Bell and Castle line of decisions from the instant case; it points out that in them the defendants personally controlled the transportation during the critical period, while here Gilinsky did not and the checks came together through happenstance. We do not consider this a significant difference. Chance or circumstance often comes to the aid of a wrongdoer in the criminal law; for example, a crime may be merely assault rather than murder if the proverbial good Samaritan saves the wounded victim from death.

■ The prosecution also directs our attention to the fact that Gilinsky committed separate criminal acts in passing the several checks in Seattle. While this is of course true, the federal crime with which we are here concerned proscribes not the passing but rather the transportation of forged checks.

The judgment of conviction is vacated with respect to Count II and the matter is remanded to the district court with directions to set aside the defendant's plea, dismiss that charge, and correct the judgment accordingly.